RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0259p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BRIAN D. WILLIAMS,

*Petitioner-Appellant,*

No. 17-3211

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 1:06-cr-00244-1; 1:16-cv-00520—Solomon Oliver Jr., District Judge.

Argued: October 5, 2017

Decided and Filed: November 15, 2017

Before: MERRITT, MOORE, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jeffrey B. Lazarus, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Rebecca C. Lutzko, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jeffrey B. Lazarus, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Robert E. Bulford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

ROGERS, J., delivered the opinion of the court in which MOORE, J., joined in the result. MOORE, J. (pp. 6–9), delivered a separate opinion concurring in the judgment. MERRITT, J. (pp. 10–11), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

ROGERS, Circuit Judge.  In this case the district court denied Brian Williams' motion to vacate his sentence under 28 U.S.C. § 2255.  Williams received an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), and he petitioned for relief in light of the Supreme Court's decision in *United States v. Johnson*, 135 S. Ct. 2551 (2015) ("*Johnson II*"), which struck down the residual clause of the ACCA as unconstitutional.  Because binding circuit precedent establishes that Williams necessarily qualified for the enhancement under the ACCA elements clause, he is not entitled to relief.

On July 28, 2006, Williams pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Williams had three prior convictions—one for attempted felonious assault in violation of Ohio Revised Code §§ 2903.11 and 2923.02, one for domestic violence in violation of Ohio Revised Code § 2919.25, and one for assault on a peace officer in violation of Ohio Revised Code § 2903.13—which subjected him to a mandatory-minimum sentence of 180 months' imprisonment under the ACCA.  Williams did not take a direct appeal, but he has twice filed petitions under § 2255.  Each was ultimately denied.

In *Johnson II* the Supreme Court held the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), unconstitutional.  135 S. Ct. at 2563.  In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held that *Johnson II* had announced a new substantive rule of constitutional law that courts must apply retroactively to cases on collateral review.  *Id.* at 1268.  Based on *Johnson II* and *Welch*, Williams filed this § 2255 motion, his third, seeking to vacate his sentence, arguing that after *Johnson II* his three convictions no longer count as predicate offenses under the ACCA.  The district court transferred this case to us on April 19 so that we could decide whether to allow Williams' successive § 2255 petition.

On October 27, 2016, a panel of this court authorized the district court to consider whether Williams' conviction for Ohio felonious assault still qualifies as a violent felony under

the ACCA. *In re Brian D. Williams*, No. 16-3411 (6th Cir. Oct. 27, 2016).[1] We recognized our decision in *United States v. Anderson*, 695 F.3d 390 (6th Cir. 2012), as a binding precedent which held that committing felonious assault in Ohio necessarily requires the use of physical force and is therefore a predicate offense under the ACCA elements clause, *id.* at 402, but also noted that "much has changed in the four years since we decided *Anderson*." We suggested but expressly did not hold that, because a conviction for felonious assault could be based on a showing of purely mental injury, the offense might not necessarily entail the use of physical force required by the elements clause. We instructed the district court to consider whether, in light of intervening Supreme Court precedents, *Anderson* still controlled Williams' case.

The district court determined that Williams' conviction for attempted felonious assault remained a qualifying predicate offense under the elements clause. The district court reasoned that *Anderson* was still controlling precedent that "squarely foreclose[d] Williams's claim." The district court denied Williams' motion to vacate his sentence but issued a certificate of appealability. Williams now appeals.

The district court was correct. As long as *Anderson* remains binding precedent, Williams is not entitled to relief. Because there is no tenable basis for this panel to overrule *Anderson*, the district court was correct to deny Williams' motion.

Williams bases his § 2255 motion on *Johnson II*, but his case is not affected by that holding. Section 2255 motions based on *Johnson II* are appropriate where "the sentencing court may have relied on the residual clause in imposing [the defendant's] sentence." *In re Rogers*, 825 F.3d 1335, 1338 (11th Cir. 2016) (quoting *In re Adams*, 825 F.3d 1283, 1286 (11th Cir. 2016)). But when binding precedent clearly establishes that a violent felony used to enhance the movant's sentence under the ACCA qualifies as a predicate offense under a separate provision of the ACCA, like the elements clause, the holding of *Johnson II* is not implicated because the enhancement would survive without the residual clause. That is the case here: *Anderson*, a published and binding circuit precedent, unambiguously held that the Ohio felonious assault

---

[1]The panel held that Williams' convictions for domestic violence and assault on a peace officer "fall squarely under the elements clause," 18 U.S.C. § 924(e)(2)(B)(i), so those convictions are not before us.

statute, Ohio Rev. Code § 2901.01(A)(5), qualifies as a violent felony under the elements clause. *See* 695 F.3d at 402. As long as *Anderson* remains binding, Williams appropriately received an enhanced sentence irrespective of the now-unconstitutional residual clause.

Williams' motion therefore rises or falls with *Anderson*, but his arguments to overrule that case are not persuasive. Because *Anderson* is a published decision, we are bound by it unless the Supreme Court or our court sitting en banc has issued a new inconsistent decision. *See Hinchman v. Moore*, 312 F.3d 198, 203 (6th Cir. 2002) (citing *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). Nothing requires that result here.

First, Williams mentions that our previous panel "questioned whether *Anderson* remained authoritative" when it authorized his motion, but that fact is of little import here. The prima facie showing for a second or successive § 2255 motion is minimal. *See In re Embry*, 831 F.3d 377, 381 (6th Cir. 2016). Williams' arguments are not frivolous, so that panel properly permitted the district court to consider them. But that panel expressly stated that it "need not decide" the question currently before us: whether *Anderson* remains binding. *In re Brian D. Williams*, No. 16-3411, at 5 (6th Cir. Oct. 27, 2016).

Second, there is no conflict between *Anderson* and our later decision in *United States v. Perry*, 703 F.3d 906 (6th Cir. 2013). Williams implies that we must overrule one or the other, but that is not so. As noted above, *Anderson* held that Ohio felonious assault is a violent felony under the elements clause. *See* 695 F.3d at 402. *Perry*, however, held the same crime to be a predicate offense under the residual clause. 703 F.3d at 910. Contrary to Williams' argument, it is not correct to read into *Perry* an implicit rejection of *Anderson*, i.e., a negative implication that felonious assault's being a predicate offense under the residual clause precludes its being a predicate offense under the elements clause. The residual clause was broad and amorphous (indeed, unconstitutionally so) and therefore unsurprisingly covered offenses that would also have qualified under another provision of the ACCA. The passage Williams quotes from our decision in *United States v. Rodriguez*, 664 F.3d 1032, 1038 (6th Cir. 2011) ("The residual clause is pertinent only if the crime in question is not enumerated under the guideline and the crime does not have as an element the use, attempted use, or threatened use of force."), does not establish a rule to the contrary. The above-quoted language in *Rodriguez* merely describes why

one of our prior unpublished opinions had no need to "resort also to the residual clause to decide the case." *Id.* Because *Perry* says nothing about whether Ohio felonious assault qualifies as a violent felony under the elements clause, it does not undermine *Anderson*.

Third and finally, neither *Descamps v. United States*, 133 S. Ct. 2276 (2013), nor *Mathis v. United States*, 136 S. Ct. 2243 (2016), is relevant here because neither case has anything to do with the significant part of our holding in *Anderson*. *Descamps* holds that the modified categorical approach is only appropriate for divisible statutes, 133 S. Ct. at 2283–84, and *Mathis* instructs courts how to determine divisibility, 136 S. Ct. at 48–49, 56. But whether or not Ohio's felonious assault statute is divisible makes no difference to Williams' case because, under *Anderson*, it was impossible for him to have violated the statute in a nonviolent way. In other words, regardless of the statute's divisibility (which is the only thing that *Descamps* and *Mathis* can influence), Williams' claim would still necessarily require this panel to overrule *Anderson*, which held that *both* parts of the statute require the use of physical force and are therefore violent felonies under the ACCA elements clause. *See* 695 F.3d at 400. The *Anderson* court said, "[the statute] requires proof of serious physical harm or physical harm . . . by means of a deadly weapon or dangerous ordnance, [which] necessarily requires proof that the defendant used force capable of causing physical pain or injury." *Id.* (internal quotations omitted). None of the intervening cases pointed to by Williams provides any reason to question *Anderson*'s holding. At bottom, Williams' arguments against *Anderson* are nothing more than disagreement with that case on its own terms.

None of Williams' arguments permits this panel to overrule *Anderson*. For that reason, the holding of *Johnson II* is not implicated in this case because Williams' sentence under the ACCA was appropriate apart from its now-unconstitutional residual clause.

We affirm the judgment of the district court.

---

**CONCURRING IN THE JUDGMENT**

---

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. I agree that Williams's motion rises or falls with *United States v. Anderson*, 695 F.3d 390 (6th Cir. 2012), and that no intervening decision of either the United States Supreme Court or our court sitting en banc authorizes us to depart from its holding, *see Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Even if, for example, we understood *United States v. Perry*, 703 F.3d 906 (6th Cir. 2013), to be inconsistent with *Anderson*, "we must defer to a prior case when two panel decisions conflict," *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 822 (6th Cir. 2000). Accordingly, because *Anderson* held that both prongs of Ohio's felonious assault statute, Ohio Rev. Code § 2903.11—just like both prongs of its functionally equivalent aggravated assault statute, Ohio Rev. Code § 2903.12—"necessarily require[] proof that the defendant used 'force capable of causing physical pain or injury,'" *Anderson*, 695 F.3d at 400 (quoting *Johnson v. United States* (*Johnson I*), 559 U.S. 133, 140 (2010)); *see id.* at 402, nothing has changed to free us (or, more importantly, Williams) from *Anderson*'s power. Because *Anderson* has not fallen, Williams's motion does.

I write separately to emphasize my agreement with those who have already ably explained why *Anderson should* fall.[1] The Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), seeks to punish and deter, of course, armed career criminals. To do that, it prescribes enhanced sentences for people who unlawfully possess firearms under 18 U.S.C. § 922(g) and have "three previous convictions . . . for a violent felony or a serious drug offense," 18 U.S.C. § 924(e)(1). When we analyze a state criminal statute to determine whether a conviction under it qualifies as predicate crime for purposes of the ACCA, we employ, as the Supreme Court requires, the "categorical approach." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

---

[1]Williams's briefing, Judge Merritt's dissent, and our court's prior order authorizing Williams's motion, *In re Williams*, No. 16-3411, at 2–4 (6th Cir. Oct. 27, 2016), also indicate that *Anderson* is suspect. The crux of the problem is compellingly foreshadowed by Judge White's concurrence in *Anderson* itself. *See United States v. Anderson*, 695 F.3d 390, 403–06 (6th Cir. 2012) (White, J., concurring) (arguing that Ohio's aggravated assault and felonious assault statutes qualify as ACCA predicate offenses only under the then-permissible residual clause rather than the elements clause).

We "focus solely on whether the elements of the crime of conviction sufficiently match the elements of [the relevant ACCA provision], while ignoring the particular facts of the case." *See id.*; *Johnson I*, 559 U.S. at 138. If the state statute sweeps "more broadly than" what the ACCA points to, then "no conviction under that law [can] count as an ACCA predicate." *Mathis*, 136 S. Ct. at 2248–49.

If a statute "list[s] elements in the alternative, and thereby define[s] multiple crimes," we "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 2249; *see also Shepard v. United States*, 544 U.S. 13, 26 (2005). And if we can tell the answer to that question, we "can then compare that crime, as the categorical approach commands, with the relevant generic offense." *See Mathis*, 136 S. Ct. at 2249. But if "nothing in the record" allows us "to conclude that [the defendant's conviction] rested upon anything more than the least of [the potential alternative crimes]," then "his conviction was a predicate conviction" under the ACCA only if even the most questionable element passes muster. *See Johnson I*, 559 U.S. at 137 (citation omitted). The core analytical process, in other words, is the same: for any set of crime-defining elements under which a defendant's judgment of conviction might have been entered, those elements must sweep no further than the ACCA's borders, or else there is a categorical mismatch and the conviction cannot serve as a predicate offense. *See, e.g., Mathis*, 136 S. Ct. at 2248–49; *Johnson I*, 559 U.S. at 136–37.

Relevant to our purposes here, the ACCA states that a crime can qualify as a "violent felony" under § 924(e)(1) if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i).[2] And the U.S. Supreme Court has made clear that in referring to "physical force," Congress "mean[t] *violent force*—that

---

[2]This provision is known as the "force clause" or the "elements clause," in light of its defining a particular element—violent physical force—that must be present. A crime can also qualify as a predicate offense if it "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). This provision is known as the "enumerated clause," in light of its enumerating generic crimes that qualify as predicate offenses. *See, e.g., United States v. Maldonado-Palma*, 839 F.3d 1244, 1246–47 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 1214 (2017). As Judge Rogers's opinion notes, the once-permissible residual clause—the erstwhile third means by which a conviction could qualify as an ACCA predicate—was struck down by the Supreme Court in *United States v. Johnson (Johnson II)*, 135 S. Ct. 2551 (2015).

is, force capable of causing physical pain or injury to another." *Johnson I*, 559 U.S. at 140; *see also id.* at 138 ("The adjective 'physical' is clear in meaning . . . . It plainly refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force.").

This definition makes sense, since the ACCA exists to punish people who are armed career criminals: it sweeps in, for example, people who repeatedly commit acts of violent force against others. That definition does not include, however, someone who touches another "on the shoulder without consent." *Id.* at 138 (citation omitted). Nor, we must assume, does the definition include "a person who surreptitiously poisons another, or removes the brakes from another's car," or "a parent who continues to feed his or her child a steady diet of junk food until the child suffers the heart damage that doctors promised," *see Anderson*, 695 F.3d at 404 (White, J., concurring), or a person who mercilessly mocks and taunts another until he suffers a nervous breakdown. These acts are likely punishable under other statutes, but they are not properly understood as acts of "*violent force.*" *See Johnson I*, 559 U.S. at 140. That is, they are not the kinds of bad acts that Congress targeted in enacting § 924(e). *See id.*

At least one prong of Ohio's felonious assault and aggravated statutes seems to suffer from this same, categorical flaw: it sweeps in conduct that Congress did not target in enacting § 924(e). Ohio Rev. Code § 2903.11(A) declares that no one shall "knowingly":

(1)    Cause serious physical harm to another or to another's unborn;

(2)    Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

*Id.* But what constitutes "serious physical harm" within the meaning of § 2903.11(A)(1)? Section 2901.01(A)(5) tells us. It declares that "'[s]erious physical harm" means any of five possibilities. And one of those possibilities is "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." Ohio Rev. Code § 2901.01(A)(5)(a). This, as Williams points out, creates a categorical mismatch: "the elements of Ohio's felonious assault statute may be met without any physical touching or physiological impairment, but only by the defendant causing the victim a mental illness." Appellant's Br. at 8. And the Ohio courts have, in fact, interpreted the statute this way. *See State v. Hunter*, 2005-

Ohio-443, 2005 WL 281159, at ¶ 18 (Ohio Ct. App. Feb. 4, 2005) ("[F]elonious assault could be committed without the commission of an assault where the only 'serious physical harm' to the victim was mental harm."); *State v. Cooper*, 743 N.E.2d 427, 434 (Ohio Ct. App. 2000) ("Not only may a person commit felonious assault by perpetrating an act causing mental illness, but a person may commit felonious assault when his or her failure to act causes mental illness."); *State v. Elliott*, 663 N.E.2d 412, 415 (Ohio Ct. App. 1995) (holding that § 2903.11(A) "is drafted so broadly as to encompass a failure to act which results in serious physical harm" when that physical harm is "defendant's failure to act to prevent [his child] from discovering his mother's [dead] body").

Properly understood, a statute "drafted so broadly as to encompass" harm through acts that do not involve violent force, *Elliott*, 663 N.E.2d at 415, cannot qualify as a "violent felon[y] under the force prong of the ACCA," *Anderson*, 695 F.3d at 406 (White, J., concurring). When "considering an ACCA enhancement under the categorical approach," we "must take state law as [we] find[] it, including state courts' interpretations of state law." *United States v. Collier*, 493 F.3d 731, 737 (6th Cir. 2007). Here, one prong of Ohio's felonious assault statute, as codified in the Ohio Revised Code and interpreted by Ohio courts, sweeps more broadly than what the elements clause of the ACCA delimits. Because *Anderson* condones this impermissible excursion beyond the ACCA's categorical bounds, we ought to reconsider *Anderson* en banc. Until we do, however, I agree that *Anderson* controls this case. I thus concur in the judgment; we are not empowered under current binding Sixth Circuit caselaw to give Williams the relief that he justifiably seeks.

_____

**DISSENT**

_____

MERRITT, Circuit Judge, dissenting.  The defendant, Williams, pled guilty to one count of possession of a firearm by a felon and was then sentenced to a mandatory minimum sentence of 15 years under the Armed Career Criminal Act.  I do not think that the *United States v. Anderson* case, 695 F.3d 390 (6th Cir. 2012), relied upon by my colleagues, controls the disposition of this case in light of the intervening case of *Mathis v. United States*, 136 S. Ct. 2243 (2016).

The only question before us is whether Williams' Ohio state conviction for "felonious assault" should count as a "violent felony" under the federal Act, defined for purposes of this case as "the use, attempted use, or threatened use of *physical force* against the person of another."  18 U.S.C. § 924(e)(2)(B)(i) (emphasis added).

In my view, a divisible part of the Ohio "felonious assault" statute that Williams pled guilty to is different from and less serious than the federal culpability requirement of committing a "violent felony."  The Ohio statute allows punishment for causing "any mental illness . . . as would normally require hospitalization or prolonged psychiatric treatment."  Ohio Rev. Code Ann. § 2901.01(A)(5)(a).  Thus under the Ohio statute verbal and other forms of non-physical abuse are covered.  We do not know precisely what the conduct that Williams pled guilty to was.

When the prior panel remanded this case to the district court for review, we said clearly:

> [I]t is possible that a conviction for attempted felonious assault, because it allows for a showing of the broadly defined "serious physical harm" under subsection 2901.01(A)(5), might be obtained without establishing any such physiological impairment, and thus might not "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another," as would be required to use the conviction as a prior conviction under the elements clause. 18 U.S.C. § 924(e)(2)(B)(i).

*In re Williams*, No. 16-3411, at 3 (6th Cir. Oct. 27, 2016).  We also said that the *Anderson* case in which we had suggested that the Ohio statute met the "physical harm" requirement may not apply because "much has changed in the four years since we decided *Anderson*."  *Id.* at 4.

I agree with the earlier panel of our court that "much has changed" in the interpretation of the mandatory penalties of the Armed Career Criminal Act since *Anderson* was decided. The case of *Mathis v. United States*, 136 S. Ct. 2243 (2016), intervened.

Because divisibility is a "threshold inquiry," *Mathis* states that "[t]he first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means." 136 S. Ct. at 2256. One of the divisible parts may be satisfied, as stated above, by nonphysical abuse. Had the Court applied the *Mathis* analysis, it would have inquired into how the Ohio legislature defined "serious physical harm." The statute authorizes punishment for "mental illness," a type of harm that can be caused without the use of physical force as required by the federal Act. The *Anderson* majority did not mention or analyze the "mental harm," as distinguished from the "physical harm," section of the Ohio statute. Hence the *Anderson* court did not follow the analytical procedure or reasoning process now established by the Supreme Court in *Mathis*, "four years" after *Anderson*, as our earlier panel in this case warned when we remanded Williams' case to the district court. Like the *Anderson* court, the district court continued to overlook the *Mathis* reasoning process. My colleagues are now making the same mistake. I do not understand what they mean by disposing of this case with the conclusion that Williams' arguments "are nothing more than disagreement with that case [*Anderson*] on its own terms." Rather, Williams is arguing that the court below, like *Anderson*, has not followed the "terms" set out in *Mathis*.

Perhaps this confusion is not surprising because, as Justice Breyer said, the Armed Career Criminal Act creates a "time-consuming legal tangle." *Mathis*, 136 S. Ct. at 2264 (Breyer, J., dissenting). Justice Alito agreed and referred to the analytical process simply as a "mess." *Id.* at 2269 (Alito, J., dissenting).